UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LOWELL B. SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-02355-JPH-TAB |
| JOHN MARTOCCIA, MATT MYERS, GREENLEE,[1] OLDHAM,[2] | ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Lowell B. Smith has sued Jail Commander John Martoccia, Sheriff Matt Myers, Officer Greenlee, and Officer Oldham for violating his First Amendment rights by retaliating against him. Mr. Smith alleges that in response to his complaints and grievances about sanitation and the potential spread of diseases at the Bartholomew County Jail in Columbus, Indiana, he was moved to another housing unit and housed with an inmate who has MRSA even though Mr. Smith has a rare blood clotting factor disorder that places him at a higher risk of infection. The defendants seek summary judgment. For the reasons explained below, the defendants' motion for summary judgment, dkt [26], is **granted.**

---

[1] Officer Greenlee was misidentified in the Complaint as Officer Green. The **clerk is directed** to update the docket to reflect that Officer Green is really Officer Greenlee.

[2] Officer Oldham was misidentified in the Complaint as Officer Odem. The **clerk is directed** to update the docket to reflect that Officer Odem is really Officer Oldham. See dkt. 28-3.

## I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A

genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). However, if the non-movant's evidence is "merely colorable" or "not significantly probative," then there is no genuine issue for trial and summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## II. Undisputed Facts

Mr. Smith was booked into the Bartholomew County Jail (the "Jail") on March 29, 2018. Dkt. 28-1 at ¶ 4. The Jail housed Smith in several different cells during his period of incarceration. *Id.* at ¶ 5.[3] Smith also suffered from several medical conditions that required him to be assigned to a bottom bunk on the first tier of the inmate housing area. Dkt. 28-1 at ¶ 14; 28-3 at ¶ 6. The restrictions caused by Smith's medical conditions limited the bunks/cells to which Smith could be assigned. *Id*.

The jail's intake officer initially assigned Smith to sleep on a cot in Cell 436 after Smith was cleared by the jail's medical department. Dkt. 28-3 ¶ 7. Once a bottom bunk became available on April 6, 2018, seven days after Smith's initial housing assignment, Defendant James Oldham

---

[3] These cells were not in general population. Although Smith testified that he never said he did not wish to be placed in the general population, dkt. 31 at ¶ 3, Mr. Oldham, a classifications officer, testified that when the Jail processed Smith upon arrival, Smith indicated he did not wish to be placed into general population. Dkt. 28-3 at ¶ 5. Consequently, Mr. Oldham believed that Smith could only be housed in the jail's segregation blocks, which were G block and M block. *Id*. Whether Smith said that he did not want to be placed in general population is not material to the issues presented.

("Oldham"), who was a classifications officer, assigned Smith to a bottom bunk in Cell 404, which was on the bottom tier of the jail's G Block. *Id.* Smith remained in a bottom bunk in G Block until July 30, 2018. *Id.* at ¶ 8.

During his time in G Block, Smith submitted numerous grievances complaining about the conditions of his confinement in G Block. Dkt. 28-1 at ¶ 13. On July 28, 2018, Smith submitted a grievance complaining about inadequate opportunities to access ice and water in G Block. Dkt. 28-1 at p. 77. On July 30, 2018, Captain Nichole Kinman responded to Smith's June 28, 2018, grievance by telling Smith he would be "moved to another location where you should have more opportunity." *Id*.

On or around July 30, 2018, Captain Kinman contacted Oldham and requested that Oldham assign Smith to a cell block other than G Block because Smith indicated he was unhappy with the conditions in G Block. Dkt. 28-3 at ¶ 9. Pursuant to Captain Kinman's request, Oldham assigned Smith to bunk 1 in Cell 437 in M Block, which was the only available bottom bunk located on the first tier of M Block at that time. *Id.* at ¶ 10. Smith did not suffer any restrictions to his privileges or amenities as a result of being transferred to Cell 437 on July 30, 2018. Dkt. 28-1 at ¶ 12.

After being transferred to Cell 437, Smith complained he did not wish to be housed in the same cell with inmate Ryan Melloh ("Melloh"). *Id.* at ¶ 11. On August 1, 2018, Oldham immediately reassigned Smith to Cell 536, so Smith no longer shared a cell with Melloh.[4] *Id.* at ¶ 12. In total, Smith remained in the cell with Melloh for forty-five hours. Dkt 28-1 at ¶ 8.

---

[4] Mr. Smith testified that contrary to the defendants' evidence, Cell 536 is not a first-floor cell, but instead is located on the upper floor which required Mr. Smith to climb the steps five or six times a day. In addition, he was not placed on the bottom bunk, but on a cot they refer to as a boat. Dkt. 32 at ¶ 17. This second transfer, however, is outside the scope of the original complaint that identified the factual basis for the retaliation claim as placement with another inmate with MRSA. See dkt. 1 (complaint). Mr. Smith was specifically given an opportunity to notify the Court if additional claims were alleged in the complaint, but no additional claims were identified. Dkt. 6 at p. 4. Any claim of retaliatory transfer to an upper tier housing unit is not proceeding in this case so this dispute is not material.

During all times relevant to the claims raised in this action Defendant John Martoccia ("Martoccia") was the Bartholomew County Jail Commander, dkt. 28-1 at ¶ 2, and defendant Matt Meyers ("Meyers") was the duly elected Sheriff of Bartholomew County, Indiana. Neither Martoccia or Meyers made the decision to transfer Smith nor did Oldham consult with them on the decision to transfer Smith from Cell 406 to Cell 437 on July 30, 2018. *Id.* at ¶ 9.

Defendants Oldham and James Greenlee ("Greenlee") were classifications officers at the Bartholomew County Jail during all times relevant to this suit. Dkt. 28-3 at ¶ 2; dkt. 28-4 at ¶ 2. The Bartholomew County Jail's classifications officers controlled the day-to-day assignment of inmates to their respective housing. Dkt. 28-1 at ¶ 9. The Jail's classification officers were authorized to transfer inmates to different housing areas within the jail for various reasons. *Id.* Those reasons included the inmate's history, security concerns, inmate medical conditions and inmate requests. Dkt. 28-3 at ¶ 4; dkt. 28-4 at ¶ 4. Greenlee was not involved in the decision to assign Smith to Cell 437 on July 30, 2018. Dkt. 28-4 at ¶ 5. Neither Oldham nor Greenlee knew inmate Ryan Melloh suffered from a staphylococcus infection or any other sort of communicable disease at the time Oldham assigned Smith to Cell 437 on July 30, 2018. Dkt. 28-3 at ¶ 13; dkt. 28-4 at ¶ 6.

### III. Discussion

The Complaint alleges that Jail Commander John Martoccia, Sheriff Matt Myers, Officer Greenlee, and Officer Oldham, retaliated against Mr. Smith by placing him in a cell with an inmate with MRSA. The defendants argue that they are entitled to summary judgment because Mr. Smith cannot show that they retaliated against him and even if they did, Mr. Smith did not suffer a deprivation that would likely deter future First Amendment activity.

### A. Defendants Jail Commander Martoccia, Officer Greenlee and Sheriff Meyers

The claims in this case are necessarily brought pursuant to 42 U.S.C. § 1983. A defendant can be held liable under Section 1983 only for deprivations that he or she personally caused, either by direct action or by approval of the conduct of others – vicarious liability cannot support a Section 1983 claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993) (liability under Section 1983 must be based on personal responsibility, not *respondeat superior*). In order to be held responsible for the violation of a federally secured right pursuant to 42 U.S.C. § 1983, an individual must have personally participated in the alleged constitutional violation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (citing *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996)).

The defendants argue that Jail Commander Martoccia, Officer Greenlee and Sheriff Meyers are entitled to summary judgment because they were not involved with the allegedly retaliatory act of assigning Smith to Cell 437 on July 30, 2018.

In response, Mr. Smith first argues that Mr. Greenlee's affidavit reflects that he was involved in the decision to assign Mr. Smith to cell 437. Dkt. 32 at ¶ 13. Mr. Smith is mistaken. Mr. Greelee's affidavit specifically states that he was not involved in the decision to assign Mr. Smith to Cell 437 on July 30, 2018. Dkt. 28-4 at ¶ 5. Mr. Smith further contends that he "disagrees" with the Sheriff's testimony because he "knows what is going on plus he walks around the jail." Dkt. 32 at ¶ 14. But Mr. Smith's speculation that the Sheriff was involved is not enough to create a material fact in dispute, given the Sheriff's specific testimony that he did not make the decision to transfer Mr. Smith and that he was not consulted regarding the July 30, 2018, transfer. Dkt. 28-2 at ¶ 9.

The undisputed designated evidence shows that Jail Commander Martioccia, Officer Greenlee and Sheriff Meyers had no role in the decision to transfer Mr. Smith to Cell 437 on July 30, 2017. Instead, classification officer Oldham was responsible for assigning Mr. Smith to Cell 437 on July 30, 2017. Dkt. 28-3. Jail Commander Martioccia, Officer Greenlee and Sheriff Meyers cannot be held personally liable for the transfer even if it were retaliatory. Accordingly, these defendants are entitled to summary judgment.

### B. Officer Oldham

Officer Oldham seeks summary judgment on the basis of qualified immunity. He argues Mr. Smith has not identified a clearly established right that was violated by moving Mr. Smith to Cell 437 on July 30, 2018. For the reasons explained below, Oldham is entitled to judgment as a matter of law.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted).

Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing v. Village of Olympia Fields*, 266 F.3d 685, 688 (7th Cir. 2001) (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999)). "To overcome qualified immunity, the facts viewed in the light most favorable to [Smith] must show that the defendants violated a

7

constitutional right and that the right was clearly established at [that] time." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (internal quotations omitted).

"To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Id.* at 878 (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

First, there is no dispute that Smith engaged in activity protected by the First Amendment. "A prisoner has a First Amendment right to make grievances about conditions of confinement," *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010), and to file lawsuits, *McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (citing *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)). This is clearly established.

As to the second element, the transfer was not sufficiently adverse to support a retaliation claim. "The standard for determining whether an action is sufficiently adverse to constitute retaliation is well established: it must be 'likely [to] deter a person of ordinary firmness from continuing to engage in protected activity.'" *Holleman,* 951 F.3d at 880 (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). This is an objective standard. *Id.* No reasonable fact-finder could conclude that the transfer Smith experienced in response to his complaint was sufficiently adverse.

In this case, Smith complained about the conditions of his confinement at the Bartholomew County Jail in G Block and was transferred to M Block. There is no basis to conclude that Oldham understood that transfer to be adverse. Captain Kinman requested that Oldham make the move because Smith was unhappy about what he considered to be insufficient opportunities to access

ice and water in G Block. Further, the undisputed evidence reflects that Oldham did not know that inmate Melloh suffered from an infection at the time Smith was transferred to his cell on July 30, 2018. Smith argues that Oldham should have known of Melloh's infection because Melloh was receiving treatment, but there is no evidence to support this argument. Smith testifies that he notified jail employees of the infection on July 30, 2018, after the transfer. Dkt. 32 at ¶ 7. But this fact does not support a claim of retaliation based on the transfer to Cell 437. In any event, Smith was transferred out of Melloh's cell approximately forty-five hours later.

Finally, the Seventh Circuit recently held, "a transfer initiated to punish a prisoner for engaging in protected activity would satisfy the causation element of retaliation, but a transfer initiated as a rational, justifiable response to the substance of the prisoner's complaint would not." *Holleman*, 951 F.3d at 879. That is the case here. It was appropriate for Oldham to consider Smith's complaints about his prison conditions in G Block and to decide that transferring him to M Block would remove him from some of the complained of conditions. No reasonable fact-finder could conclude that Smith's "transfer was motivated by the fact that he engaged in protected activity and not merely motivated by the substance of his complaint." *Id.* at 879 ("To hold otherwise would absurdly result in requiring prison officials to respond to every grievance by enacting the prisoner's preferred solution, rather than allowing officials to exercise their own judgment.").

Because Smith has failed to meet his burden of proof to show that the transfer was motivated by his engagement in protected activity and sufficiently adverse, his First Amendment right to be free from retaliation was not violated. Since his right was not violated, there is no need to analyze whether it was clearly established. The defendants are entitled to summary judgment in their favor.

## IV. Conclusion

The defendants are entitled to judgment as a matter of law. The motion for summary judgment, dkt [26], is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 6/1/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LOWELL B. SMITH
251281
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Corey J. Dunn
KIGHTLINGER & GRAY LLP
cdunn@k-glaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com